Chief United States Magistrate Judge Brian A. Tsuchida
United States Magistrate Judge Mary Alice Theiler

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALAN GOMEZ-MARENTES, et al.,<br><br>Defendants. | NO. CR20-092JCC<br><br>UNITED STATES' OMNIBUS MEMORANDUM IN SUPPORT OF DETENTION |
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ADRIAN SIMS,<br><br>Defendant. | NO. MJ20-470BAT<br><br>UNITED STATES' OMNIBUS MEMORANDUM IN SUPPORT OF DETENTION |

## I.      INTRODUCTION

The United States respectfully submits this memorandum in support of its

detention motions in the above-captioned matters to provide a brief overview of the

investigation that led to these charges, summarize the applicable law (which is of course

United States' Omnibus Memorandum in Support of Detention – 1
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  well known to the Court), and then address any specific issues presently known to the

2  United States that apply to individual defendants relevant to that defendant's continued

3  detention.

## II.    BACKGROUND OF THE INVESTIGATION

5      This case arises out of a multi-agency investigation involving the Drug

6  Enforcement Administration (DEA), Federal Bureau of Investigation (FBI), Homeland

7  Security Investigations (HSI), Bureau of Alcohol, Tobacco, Firearms, and Explosives

8  (ATF), and Internal Revenue Service (IRS).  They, together with other state and local law

9  enforcement agencies, have been investigating a drug trafficking organization (DTO)

10  operating throughout Western Washington believed to be tied to the Jalisco New

11  Generation Cartel (CJNG) in Mexico.  During the investigation, agents conducted

12  thousands of hours of physical and electronic surveillance, seized more than 140 pounds

13  of methamphetamine during interdiction stops, intercepted hundreds of phone calls and

14  text messages, executed search warrants at DTO members' residences, and utilized

15  various other law enforcement techniques.

16      The wiretaps and other investigative techniques revealed a massive conspiracy to

17  distribute large amounts of methamphetamine and heroin, as well as significant quantities

18  of fentanyl-laced imitation oxycodone pills.  The wiretaps also revealed DTO members'

19  propensity for violence.  One co-defendant was shot outside a residence where the DTO

20  was converting methamphetamine from liquid to crystal form.  Intercepted

21  communications revealed kidnapping plots and intimidation through use of

22  violence/firearms.

23      Also pertinent to the detention issue, the investigation also showed that many of

24  the DTO members traveled to and from Mexico in furtherance of their drug trafficking

25  activities.  Some of the DTO members are unlawfully present in the United States, with

26  previous deportations.  At least one of these deportations occurred during the

27  investigation, and had no deterrent effect – given the DTO members' returns to the

28  United States and resumption of their drug trafficking activities.

United States' Omnibus Memorandum in Support of Detention – 2
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    Agents executed more than three dozen search warrants (residences, vehicles, and
2  storage units) in Western Washington and the Los Angeles, California, area on July 28,
3  2020, along with more than a dozen arrest warrants.  Agents also made one probable
4  cause arrest.  All told, the search warrants resulted in the seizure of 20 pounds of
5  methamphetamine, lesser amounts of heroin and cocaine, 200 suspected fentanyl-laced
6  imitation oxycodone pills, nine firearms, and more than $100,000 in cash.  Prior seizures
7  included more than 100 pounds of methamphetamine, 1,500 suspected fentanyl-laced
8  imitation oxycodone pills, and six firearms.

9                    **III.    LEGAL STANDARDS FOR DETENTION**

10    This Court is of course quite familiar with the legal standards governing detention
11  or release.  To summarize, the Bail Reform Act provides that a court should detain a
12  defendant pending trial if "no condition or combination of conditions . . . will reasonably
13  assure the appearance of the person as required and the safety of any other person and the
14  community."  18 U.S.C. § 3142(f).  The United States typically bears the burden of
15  showing that a defendant poses a danger to the community by clear and convincing
16  evidence, and it bears the burden of showing that a defendant poses a flight risk by a
17  preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir.
18  1991).

19    The Bail Reform Act identifies four factors that a court should consider in
20  analyzing detention issues: "(1) The nature and circumstances of the offense charged,
21  including whether the offense . . . involves a narcotic drug; (2) the weight of the evidence
22  . . . ; (3) the history and characteristics of the person, including . . . family ties,
23  employment, financial resources, length of residence in the community, community ties,
24  past conduct, history relating to drug or alcohol abuse, criminal history, . . . ; and . . . (4)
25  the nature and seriousness of the danger to any person or the community that would be
26  posed by the person's release . . . ." 18 U.S.C. § 3142(g).  Of these factors, the weight of
27  evidence is least important, and the statute neither requires nor permits pretrial
28  determination of guilt.  18 U.S.C. § 3142(g).

United States' Omnibus Memorandum in Support of Detention – 3
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

As noted above, the government generally has the burden of proof and persuasion regarding detention.  However, *all* of the defendants in this matter are charged with one or more serious Title 21 offenses.  As to those charges, the Bail Reform Act expressly provides that:

> [s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 *et seq.*) . . . or an offense under section 924(c) . . . of title 18 of the United States Code . . .

18 U.S.C. § 3142(e).  The return of an indictment is sufficient to support a finding of probable cause, triggering the rebuttable presumption.  *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985); *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986); *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991).

In a case where the presumption applies, Courts have found that the *defendant* bears the burden of producing evidence that he or she does not pose a danger to the community or risk of flight in order to rebut the presumption.  *See United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003); *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir.2001);. *Stricklin*, 932 F.2d at 1354.  The government retains the burden of persuasion. *Mercedes*, 254 F.3d at 436.

However, even if a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear.  Rather, it remains a factor to be considered among those weighed by the district court.  *See Stricklin*, 932 F.2d at 1354-55; *Mercedes*, 254 F.3d at 436; *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992).  If the presumption were to vanish once a defendant produced *some* evidence, courts would not give adequate deference to the fact that Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir.1986); *United States v. Hare*, 873 F.2d 796, 798 99 (5th Cir.1989).

United States' Omnibus Memorandum in Support of Detention – 4
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Finally, it is well settled that at a detention hearing the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors.  *See, e.g. United States v. Salerno*, 481 U.S. 739, 743 (1987); *United States v. Winsor*, 785 F.2d 757 (9th Cir. 1986); *United States v. Cardenas*, 784 F.2d 937 (9th Cir.), *vacated as moot upon defendant's conviction*, 792 F.2d 906 (9th Cir. 1986).  The statements of fact herein, which are based on intercepted communications, the search warrant affidavits sworn to the Court, and a summary of the results of said searches, is presented as such a proffer.

With respect to the intercepted communications, 18 U.S.C. § 2518(9) requires ten days' prior notice to a defendant before using any of the fruits of a wiretap at any court proceeding, including detention hearings.  The Court can waive the ten-day period upon a finding that it was not possible to provide defendant with the information earlier.  Here, the United States notified each indicted defendant at the earliest possible time (i.e., the date of his/her initial appearance) of its intent to potentially use the fruits of the wiretaps at any forthcoming detention hearing.  Although normally a detention hearing must be held, at the latest, within five days of arrest, that period may be extended for good cause.  18 U.S.C. § 3142(f)(2).

Additionally, the United States is required to provide copies of the orders and applications for the wiretaps to the defendants, which it has done through an initial production of discovery made available to defense counsel at the initial appearance(s).  Those materials are sealed by Order of the District Court.

## IV.    INDIVIDUAL DEFENDANT ROLES AND ANALYSIS

The following information about each defendant presents not only an overview of his/her respective role in the DTO but, where applicable, information as to why the United States believes a particular defendant poses a risk of flight and/or a danger to the community.  The United States' beliefs are premised on its knowledge of the entire

United States' Omnibus Memorandum in Support of Detention – 5
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  investigation, a defendant's criminal history,[1] possession of firearms, personal history, or
2  some combination of the above.

3      **1.      Alan GOMEZ-MARENTES**.

4      Alan GOMEZ-MARENTES has a detention hearing scheduled at 1:00 p.m. on
5  August 5, 2020.

6      One of the leaders of the DTO, Alan GOMEZ-MARENTES was the user of
7  multiple intercepted cell phones.  Between October 25 and 27, 2019, agents intercepted
8  multiple conversations indicating Ruth GOMEZ-MARENTES arranged for a shipment of
9  methamphetamine-infused candles from California to Washington at Alan GOMEZ-
10  MARENTES' direction.  Between October 31 and November 1, 2019, agents intercepted
11  multiple communications about the difficulties Alan GOMEZ-MARENTES, Jose Elias
12  BARBOSA, and Alysha JONES were having extracting the liquid methamphetamine
13  from the candle wax, and converting the methamphetamine to its crystalline form.

14      In the morning of November 7, 2019, agents began intercepting a text message
15  argument between BARBOSA and JONES during which each threatened the other.  In
16  the late afternoon, JONES threatened to kill BARBOSA.  Agents established surveillance
17  at a residence in Port Orchard and saw JONES with two unidentified males outside.
18  JONES and BARBOSA then agreed to meet at a nearby Fred Meyer.  Agents went to the
19  Fred Meyer, and followed JONES and BARBOSA as they (in separate vehicles, each
20  with additional occupants) drove back to the Port Orchard residence and parked in back,
21  out of view.  Agents then heard multiple gunshots.  BARBOSA would later arrive at a
22  local hospital with a gunshot wound to the collarbone.

23      Shortly after the gunshots, agents intercepted a call from an unindicted co-
24  conspirator to Alan GOMEZ-MARENTES.  The unindicted co-conspirator told him,
25  "Mandy [JONES], she hit him."  JONES told GOMEZ-MARENTES that "Prieto"

26
27  ───────────────────
28  [1] All references to criminal history are based on a review of the respective defendant's NCIC report.

United States' Omnibus Memorandum in Support of Detention – 6
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

[BARBOSA] had fired first, but "then he [unknown male] fired back."  GOMEZ-MARENTES directed those involved to clear out of the residence.  Surveillance agents then saw a white van arrive at the residence, and watched as JONES and others moved items from the residence into the van.  Two days later, on November 9, 2019, officers stopped the van and seized approximately ten pounds of crystallized methamphetamine, two igloo coolers with liquid methamphetamine in the process of crystallizing, one igloo cooler that appeared to contain a methamphetamine/wax mixture, torch lighters, a steel pot/drug and handmade filtering system, and acetone and club soda (used to whiten and "clean" recently converted methamphetamine):



On February 21, 2020, police officers in California seized 30 pounds of methamphetamine from an individual who had been in telephonic contact with Alan and Ruth GOMEZ-MARENTES between February 19 and 21, 2020.

Intercepted calls on June 5, 2020, over Alan GOMEZ-MARENTES' phone indicated that Blanca MEDINA and Efrain LUNA-RODRIGUEZ were staged in Southern California, awaiting further instructions from Alan GOMEZ-MARENTES about picking up a shipment of methamphetamine.  Alan learned (at around 8pm) that the methamphetamine (70 pounds) had been seized at the United States – Mexico border.  Agents searched Customs and Border Protection (CBP) records and discovered that approximately two-and-half hours earlier, Border Patrol agents had found and seized 78 pounds of methamphetamine concealed in a vehicle.

Intercepted communications have indicated Alan GOMEZ-MARENTES' involvement with firearms trafficking as well.  On April 10, 2020, Alan GOMEZ-

United States' Omnibus Memorandum in Support of Detention – 7
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   MARENTES asked ESPINOZA to "gather as many, as many toys [guns] as you can . . .

2   The ones that are not, the ones that are not being used . . . So I can take them down."

3   ESPINOZA responded he could get them for GOMEZ-MARENTES.  This is believed to

4   be a reference to transporting guns "down" to California (for illegal transshipment to

5   Mexico).  During this same conversation, Alan GOMEZ-MARENTES and ESPINOZA

6   discussed "Chino" and others who were in debt.  Alan GOMEZ-MARENTES said, "this

7   is about me getting, grabbing them and tying them up with a strap like a fucking dog."

8         Alan GOMEZ-MARENTES has been intercepted on multiple calls regarding debt

9   collection.  For example, on March 20, 2020, Ruth GOMEZ-MARENTES told Alan that

10   she would talk to "Matthew."  Alan told Ruth that he had a feeling "Matthew" stole from

11   him.  Three days later, Ruth GOMEZ-MARENTES told their mother that Alan GOMEZ-

12   MARENTES paid some guys to pick up "Matthew" to beat him up.

13         On July 3, 2020, Alan GOMEZ-MARENTES told ESPINOZA that an individual

14   whom he had fronted drugs to "needed a beating."  On July 7, 2020, Alan GOMEZ-

15   MARENTES told ESPINOZA that he wanted another debtor, "Chino," tomorrow, and

16   would support ESPINOZA with anything.  Alan GOMEZ-MARENTES then said he

17   would take care of Chino and would take "yours and mine" (money Chino owed to Alan

18   and ESPINOZA's boss, MAGANA-RAMIREZ).  In a later conversation, Alan GOMEZ-

19   MARENTES said, still referring to Chino, that he wanted to "fuck him up … I seriously

20   want to fuck him up, old man.  Please tell me that tomorrow morning you are going to

21   help me get him."  On July 10, 2020, Alan GOMEZ-MARENTES and MAGANA-

22   RAMIREZ discussed Chino's location and his debt, with MAGANA-RAMIREZ saying

23   "if he has to pay, he has to pay."  Alan GOMEZ-MARENTES said he was willing to

24   come along with his guys.  Alan GOMEZ-MARENTES later asked if they should take

25   care of the "mission now."  MAGANA-RAMIREZ said it would likely happen the

26   following day.

27         During the takedown on July 28, 2020, agents arrested Alan GOMEZ-

28   MARENTES and his girlfriend, Blanca MEDINA, at the Emerald Queen Casino.  During

United States' Omnibus Memorandum in Support of Detention – 8
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

the search of a Tukwila apartment he and MEDINA shared, agents found a suitcase under the bed containing approximately seven pounds of methamphetamine and nearly four pounds of heroin. Agents also found bulk currency (the amount has yet to be determined) in a dresser drawer and in a safe.

Alan GOMEZ-MARENTES is a citizen of Mexico. His criminal history includes a 2006 felony conviction in the Eastern District of Washington for Conspiracy to Distribute Cocaine (24 months' imprisonment and four years' supervised release), a 2004 gross misdemeanor conviction for refusal to give information/cooperate with an officer, and a 2002 deferred disposition (which resulted in a dismissal of the charge) for taking a motor vehicle without permission. Following completion of his federal prison term in January 2010, he was deported to Mexico on January 30, 2010.

### 2.    Juan Antonio GONZALEZ-CARRILLO.

Juan Antonio GONZALEZ-CARRILLO ("Toto"), one of the leaders of the DTO, is at large.

### 3.    Luis Arturo MAGANA-RAMIREZ.

Luis Arturo MAGANA-RAMIREZ has a detention hearing scheduled at 9:30 a.m. on August 3, 2020.

One of the leaders of the DTO, MAGANA-RAMIREZ ("Guero") was the user of multiple intercepted cell phones. The investigation revealed that he partnered with Alan GOMEZ-MARENTES and GONZALEZ-CARRILLO to obtain drugs for distribution, and worked with Jose Daniel ESPINOZA, Adrian IZAZAGA-MARTINEZ, and Jorge MONDRAGON to distribute substantial quantities of methamphetamine and heroin. For example, on April 20, 2020, MAGANA-RAMIREZ arranged for MONDRAGON to obtain 3-4 kilograms of methamphetamine from ESPINOZA, which MONDRAGON said he would be selling by the pound. In early May 2020, MAGANA-RAMIREZ directed ESPINOZA to send Benjamin FUENTES to pick up an incoming shipment of methamphetamine and 7,000 "seeds" (fentanyl pills) from a courier working for Alan GOMEZ-MARENTES. Consistent with information in intercepted calls, surveillance

United States' Omnibus Memorandum in Support of Detention – 9
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

agents saw FUENTES and Efrain LUNA-RODRIGUEZ meet in a McDonald's parking lot in Kent.  Intercepted communications also revealed that MAGANA-RAMIREZ had gone in with Alan GOMEZ-MARENTES for the 70-pound shipment of methamphetamine expected to arrive in the United States on June 5, 2020 (but seized at the border).

Also on June 5, 2020, Oregon State Police (OSP) troopers stopped a northbound speeding vehicle and identified the driver as Julian PINEDA CASILLAS.  OSP troopers searched the vehicle with PINEDA CASILLAS' consent and found over 28 pounds of methamphetamine and over 5 pounds of heroin secreted inside.  Troopers arrested PINEDA CASILLAS and seized his phone, which the DEA later obtained a warrant to search.  Data extracted from the phone included text messages and audio communications (exchanged via WhatsApp) between PINEDA CASILLAS and "Toto" (GONZALEZ-CARRILLO) and PINEDA CASILLAS and Luis Arturo MAGANA-RAMIREZ about delivering drugs to Western Washington for MAGANA-RAMIREZ.  These communications showed that GONZALEZ-CARRILLO gave PINEDA CASILLAS heroin about a week earlier (on May 28, 2020) to deliver to MAGANA-RAMIREZ.  The communications also showed that GONZALEZ-CARRILLO was trying to obtain methamphetamine for PINEDA CASILLAS to take to MAGANA-RAMIREZ, and that MAGANA-RAMIREZ was in contact with PINEDA CASILLAS about another possible source of methamphetamine.  It is unclear from the communications whether GONZALEZ-CARRILLO was ultimately able to obtain methamphetamine, or whether the 28-plus pounds in PINEDA CASILLAS' car came from MAGANA-RAMIREZ's alternate source of supply.

Intercepted communications also revealed MAGANA-RAMIREZ's involvement in multiple threats of violence, to include the planned kidnapping of BARBOSA in mid-March 2020.  MAGANA-RAMIREZ told ESPINOZA to gather all the "cholos" and offered "10 bucks" ($10,000) for BARBOSA's head.  MAGANA-RAMIREZ later told ESPINOZA that he was going kidnap BARBOSA, then kill him and his entire family.

United States' Omnibus Memorandum in Support of Detention – 10
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

ESPINOZA enlisted the assistance of Benjamin FUENTES and two others, and later in the afternoon suggested that they just talk to BARBOSA.  MAGANA-RAMIREZ offered to pay FUENTES and his two associates $200 each, and ESPINOZA $300, to beat BARBOSA up.  Kent Police Department patrol officers were able to take BARBOSA into custody on an outstanding warrant before anything happened to him.

Additional examples of MAGANA-RAMIREZ's involvement in debt collection and threats of violence include:

- On September 28, 2019, MAGANA-RAMIREZ asked BARBOSA whether "Jalisco" answered about the "two letters" that he also owed.  BARBOSA said no.  MAGANA-RAMIREZ responded, "They have to pay … If not, give him to me and I will go and fucking pick up that son of a bitch . . . we are not going to be wasting time, that's messed up."

- On April 10, 2020, MAGANA-RAMIREZ agreed to lend a "toy" (gun) to Jorge MONDRAGON.  MAGANA-RAMIREZ asked if MONDRAGON wanted the kind that would leave the bullets inside or the normal ones. MONDRAGON said any kind would do, even a shotgun.  The two agreed to meet.  MONDRAGON subsequently told MAGANA-RAMIREZ that the "firecracker" (gun) did not work.

- In July 2020, MAGANA-RAMIREZ was also intercepted, along with Alan GOMEZ-MARENTES and ESPINOZA, in the above-discussed debt collection from "Chino."

During the takedown on July 28, 2020, agents arrested MAGANA-RAMIREZ at his residence in Fife, Washington.  Agents searching his residence found approximately 50 grams of suspected cocaine, bulk currency (the amount has yet to be determined), a Colt 45 pistol, a Raven Arms P25 handgun with an obliterated serial number, and 9mm and 10mm ammunition.

Luis MAGANA-RAMIREZ is a citizen of Mexico.  He has no known criminal history.

United States' Omnibus Memorandum in Support of Detention – 11
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

4.      **Jose Elias BARBOSA.**

Jose BARBOSA is at large.

5.      **Jose Daniel ESPINOZA**.

Jose ESPINOZA has a detention hearing scheduled at 8:00 a.m. on Wednesday, August 5, 2020.

One of the higher-level redistributors, ESPINOZA (whose nickname is "Apache") was the user of multiple intercepted phones.  ESPINOZA distributed methamphetamine, heroin, cocaine, and fentanyl-laced imitation oxycodone pills for both Alan GOMEZ-MARENTES and MAGANA-RAMIREZ.  ESPINOZA sometimes utilized DTO member Benjamin FUENTES (referred to as "Chanchas") as a courier, and to communicate with English-speaking sub-distributors like Michael WOOD.

As described above, ESPINOZA gathered people to effectuate the planned kidnapping of BARBOSA.  Once MAGANA-RAMIREZ decided simply to assault BARBOSA instead, ESPINOZA and two associates were tasked with the beating.

Additionally, ESPINOZA has been intercepted in multiple conversations related to the acquisition or possession of firearms and other dangerous weapons, to include:

- On March 20, 2020, ESPINOZA said he had two "long ones" (rifles) so he "could fucking spraying them."

- On March 24, 2020, ESPINOZA said he needed MONDRAGON to sell him a small "fierro" (gun).  MONDRAGON responded that he had a "40" (believed to reference the caliber).  The two agreed to meet.

- On March 24, 2020, ESPINOZA said that he needed more "firecrackers" (guns) and that he had a grenade for the "pigs" when they come for him.  ESPINOZA said he had two "firecrackers" and a grenade.  ESPINOZA said he would take a firecracker to a third party and that he would order a few.

- On April 10, 2020, as detailed above, intercepted communications indicated Alan GOMEZ-MARENTES asked ESPINOZA to gather guns for GOMEZ-MARENTES to take "down" (to California, and ultimately, to Mexico).

United States' Omnibus Memorandum in Support of Detention – 12
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

- On April 18, 2020, IZAZAGA-MARTINEZ asked ESPINOZA if a third party had shown ESPINOZA the "toy" (gun). ESPINOZA said yes. ESPINOZA told IZAZAGA to bring it "complete" (loaded).

- On April 21, 2020, ESPINOZA told FIERRO-PONCE that he wanted to borrow "it" and asked if it was nice. FIERRO-PONCE said it was a black 38 (believed to refer to the model/caliber of a firearm).

On April 20, 2020, a little after midnight, ESPINOZA and FUENTES discussed a woman named "Lavonne" who had obtained a pound of methamphetamine for the "Old Man." According to FUENTES, the Old Man said Lavonne owed him money, so the Old Man was going to keep the drugs without paying for them and the debt was Lavonne's. FUENTES later commented they should "shoot all those assholes." Within minutes, FUENTES called ESPINOZA and said he (FUENTES) had fired three warning shots in the air. Renton Dispatch confirmed they had received multiple "shots fired" calls; GPS tracking on FUENTES' phone put him in the area at the time. About 10-15 minutes later, ESPINOZA called "Freddy" and said he was going to go back to the Old Man's house, go inside, and shoot everyone.

Later that afternoon, agents intercepted communications indicating that Armando FIERRO-PONCE was trying to find someone to get the drugs from the Old Man. FIERRO-PONCE told ESPINOZA he would be at the Safeway shortly, and surveillance agents saw them meeting there with two other males (driving a silver Mercedes). As the parties left, a marked unit followed FIERRO-PONCE away, while another marked unit followed the Mercedes. FIERRO-PONCE later called ESPINOZA to say the police had been following him.

During the takedown on July 28, 2020, agents arrested ESPINOZA at his residence in Renton. Agents searching his residence found approximately two pounds of methamphetamine, a quarter-pound of heroin, a quarter-pound of suspected cocaine, two shotguns, two handguns, two sets of body armor, and approximately $28,000 cash.

United States' Omnibus Memorandum in Support of Detention – 13
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   Jose ESPINOZA is a United States citizen.  His criminal history includes a 2019

2   deferred prosecution for fourth degree assault/domestic violence, and a 2019 felony

3   conviction for taking a motor vehicle without permission (90 days).  He was arrested on

4   DOC violations multiple times in 2019 and 2020.

5   **6.     Estefhany COREA-MENDOZA**.

6   Estefhany COREA-MENDOZA ("Sicaria") has a detention hearing at 8:00 a.m.

7   on August 4, 2020.

8   One of the DTO's redistributors, COREA-MENDOZA (nicknamed "Sicaria") was

9   intercepted over several phones during the course of the investigation.

10   In November 2019, agents intercepted COREA-MENDOZA telling BARBOSA

11   she wanted to introduce him to a source of supply "down south" (California or Mexico)

12   who had "33 [pounds of methamphetamine] down there."  In mid-March 2020, COREA-

13   MENDOZA (using Benjamin FUENTES' phone) complained to ESPINOZA about Alan

14   GOMEZ-MARENTES "fucking her over" with regard to six kilograms of drugs.

15   During the takedown on July 28, 2020, agents arrested COREA-MENDOZA in

16   Bellevue, Washington.  COREA-MENDOZA had no fixed residence during the majority

17   of this investigation, and typically stayed at hotels in South King County.

18   Estefhany COREA-MENDOZA is a citizen of Honduras.  Her criminal history

19   includes 2019 arrests for evading police (in California), driving with a suspended/revoked

20   license, failure to comply, and DOC violations.  Additionally, a February 1, 2020, search

21   of a hotel room she had rented with an associate yielded Glock, a box of 9mm

22   ammunition, and a bag of crystal methamphetamine.  Two days later, she was the

23   passenger in a traffic stop during which law enforcement located two guns.

24   **7.     Adrian IZAZAGA-MARTINEZ**.

25   Adrian IZAZAGA-MARTINEZ has a detention hearing scheduled at 11:30 a.m.

26   on Monday, August 3, 2020.

27   During the initial interception period in this case (September 2019), BARBOSA

28   spoke to Alan GOMEZ-MARENTES about their drug distribution activities and

United States' Omnibus Memorandum in Support of Detention – 14
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

GOMEZ-MARENTES' assumption of BARBOSA's drug debt.  Through these early interceptions, agents identified Adrian IZAGAGA-MARTINEZ as a drug distributor for BARBOSA, and later determined IZAZAGA-MARTINEZ also worked for the DTO as a courier and debt collector.

IZAZAGA-MARTINEZ was present with ESPINOZA during the discussion to kidnap BARBOSA (as described above).  In late March 2020, after ESPINOZA received eight pounds of methamphetamine, he told IZAZAGA-MARTINEZ he would set some aside for him.  In early May 2020, ESPINOZA called MAGANA-RAMIREZ to say that IZAZAGA-MARTINEZ "wanted four" (pounds of methamphetamine) and was going to leave "21,000" ($21,000).

Adrian IZAZAGA-MARTINEZ also has been intercepted during conversations related to firearms acquisition.  For example:

- On March 31, 2020, IZAZAGA-MARTINEZ asked ESPINOZA to borrow some "firecrackers" (guns).  ESPINOZA said he only had one.  IZAZAGA-MARTINEZ said he would give it back to ESPINOZA.  IZAZAGA-MARTINEZ went on to say that "Coach" took some pills from him, and asked ESPINOZA to lend him (IZAZAGA-MARTINEZ) some people too.  ESPINOZA told IZAZAGA-MARTINEZ to come over, and confirmed that he would lend IZAZAGA-MARTINEZ the "fierros" (guns).  After further conversation about Coach, IZAZAGA-MARTINEZ said he was not going to use the guns, but still asked ESPINOZA to lend him one.

- On April 10, 2020, ESPINOZA and IZAZAGA-MARTINEZ discussed the fact that IZAZAGA-MARTINEZ had a gun.

As detailed above, on April 18, 2020 IZAZAGA-MARTINEZ appeared to agree to bring a "toy" (gun) to ESPINOZA. During the takedown on July 28, 2020, agents arrested IZAZAGA-MARTINEZ in a vehicle.  He had bulk currency on his person (the amount has yet to be determined).

United States' Omnibus Memorandum in Support of Detention – 15
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Adrian IZAZAGA-MARTINEZ is a citizen of Mexico. His criminal history includes a 2020 arrest for violation of a protection/restraining order, a 2019 gross misdemeanor conviction for third degree malicious mischief/domestic violence (14 days), and a 2019 misdemeanor conviction for possession of drug paraphernalia (2 days). He has multiple failures to appear. Under the alias name Jesus Sanchez-Palacios, he has been apprehended at the border in 2008 (with an apparent corresponding removal) and was again removed from the United States in October 2019. Under the alias name Jesus Izazaga, he was arrested in San Bernadino, California, in June 2019 on a drug charge. In October 2019, IZAZAGA-MARTINEZ was deported from the United States under an alias name (Jesus Sanchez Palacios); he had returned by at least February 2020. He also appears to have a prior removal in 2008.

**8.    Jorge MONDRAGON.**

Jorge MONDRAGON has a detention hearing scheduled for 11:00 a.m. on August 6, 2020.

MONDRAGON distributed drugs for MAGANA-RAMIREZ; co-defendant Amanda MEYER was MONDRAGON's top redistributor. MONDRAGON was the user of an intercepted cell phone.

In addition to drug trafficking, agents also intercepted MONDRAGON in multiple conversations about firearms, including the possible sale of a small "fierro" (gun) to ESPINOZA on March 24, 2020 (as discussed above); borrowing a "toy" from MAGANA-RAMIREZ (who offered either the kind that "left the bullet inside" or the "normal one"), or possibly a shotgun, and later telling MAGANA-RAMIREZ the "firecracker did not work," on April 10, 2020 (as discussed above).

On June 19, 2020, Kent police responded to a reported shooting. Upon arrival, a witness stated that MONDRAGON had fired a single shot into the air. Officers arrested MONDRAGON for possession of a stolen vehicle, and a later search of the vehicle yielded a Winchester .22 Long Rifle (LR), a Mossberg 12 gauge shotgun, and a SKS rifle. Charges have not yet been filed.

United States' Omnibus Memorandum in Support of Detention – 16
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  In mid-July 2020, agents intercepted a call between MONDRAGON and an
2  associate in which the associate enlisted MONDGRAGON's assistance in
3  "wheelchairing" someone; agents believe this meant to seriously injure/cripple the
4  individual.  When law enforcement intervened and arrested MONDRAGON (before he
5  and his associate met to finalize the details), MONDRAGON had a (stolen) loaded, 45
6  caliber pistol, and a stolen motorcycle.  Charges have not yet been filed.

7  During the takedown on July 28, 2020, agents arrested MONDRAGON at a
8  residence in Kent.  Agents found a loaded, stolen pistol tucked beneath the mattress and
9  box spring in the bedroom where MONDRAGON was sleeping when agents arrived.

10  Jorge MONDRAGON is a United States citizen.  His criminal history includes
11  2018 felony convictions for two counts of first degree unlawful possession of a firearm
12  stemming from two different incidents and a controlled substance violation (22 months),
13  a 2017 felony conviction for second degree assault (3 months), a 2017 gross
14  misdemeanor conviction for second degree vehicle prowling, a 2016 misdemeanor
15  conviction for DUI (12 days), a 2013 misdemeanor conviction for hit and run (4 days).
16  He has also had multiple failures to comply and warrants issued for failures to appear.

17  **9.      Benjamin FUENTES**.
18  Benjamin FUENTES ("Chanchas") is at large.

19  **10.     Luis ZAVALZA-SANCHEZ**.
20  Luis ZAVALZA-SANCHEZ has a detention hearing scheduled at 1:00pm on
21  Monday, August 3, 2020.

22  When the interception portion of this investigation began in September 2019, the
23  interception of BARBOSA's phone led to the identification of Luis ZAVALZA-
24  SANCHEZ ("Flako") as a drug distributor for Alan GOMEZ-MARENTES and
25  BARBOSA, among others.  In early November 2019, agents intercepted ZAVALZA-
26  SANCHEZ agreeing to give Alan GOMEZ-MARENTES all of the money he
27  (ZAVALZA-SANCHEZ) had to pay down his drug debt.  In mid-March 2020, agents
28

United States' Omnibus Memorandum in Support of Detention – 17
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   intercepted ZAVALZA-SANCHEZ telling Ruth GOMEZ-MARENTES that his current

2   debt to Alan GOMEZ-MARENTES was $60,000.

3        During the takedown on July 28, 2020, agents arrested ZAVALZA-SANCHEZ in

4   a vehicle.  He had body armor, a digital scale, and 5.56 rifle ammunition on his person.

5        Luis ZAVALZA-SANCHEZ is a citizen of Mexico.  His criminal history shows

6   he was arrested twice in 2020 for possession of drug paraphernalia.  He has a 2020

7   misdemeanor conviction for second degree criminal trespass (3 days and 24 months

8   supervision), two 2019 gross misdemeanor convictions for violating a restraining order

9   (15 days and 20 days), and a 2018 conviction for fourth degree assault/domestic violence

10  (103 days).  He also has multiple other arrests for violation of a no contact order with no

11  dispositions listed, and has multiple pending warrants for failing to appear/report for

12  probation.  During this investigation, ZAVALZA-SANCHEZ was arrested twice for

13  possession of drug paraphernalia.

14  **11.**    **Alysha JONES**.

15  Alysha JONES is at large.

16  **12.**    **Armando FIERRO-PONCE**.

17  Armando FIERRO-PONCE is at large.

18  **13.**    **Amanda MEYER**.

19       Amanda MEYER has a detention hearing (tentatively) scheduled at 9:00 a.m. on

20  Thursday, July 30, 2020.

21       MEYER distributed drugs for MONDRAGON.  In early July 2020, MEYER

22  appeared to have found a different source of supply who offered her a better price.

23  MAGANA-RAMIREZ directed MONDRAGON to talk with her, to see if they could

24  work something out.  MEYER agreed to meet with MONDRAGON; later intercepted

25  calls suggested that MONDRAGON was able to bring MEYER back into the DTO, and

26  supplied her with a pound of methamphetamine and a sample of heroin.  Agents

27  witnessed a meeting between MONDRAGON and a male (who resides with MEYER),

28  during which agents believe MONDRAGON delivered additional heroin.

United States' Omnibus Memorandum in Support of Detention – 18
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

During the takedown on July 28, 2020, agents arrested MEYER at her residence in Kent.  During the search of her garage, agents found a drug ledger, baggies, and digital scale.  Agents also found a safe to which MEYER provided the combination.  Inside the safe, agents found a clone Glock 9mm handgun (which MEYER said she accepted as payment for a drug debt owed by a customer), three baggies of blue suspected fentanyl-laced imitation oxycodone pills, one baggie of green suspected fentanyl-laced imitation oxycodone pills, one baggie of white Xanax pills.

Amanda MEYER is a United States citizen.  Her criminal history includes juvenile adjudications for controlled substance violations, two adult convictions for driving with a suspended license (second degree), in 2001 and 2003, and tampering with property of another (third degree) in 2010.  MEYER has had two warrants issued for past failures to appear.

**14.    Michael Andrew WOOD.**

Michael WOOD is at large.

**15.    Efrain LUNA-RODRIGUEZ.**

Efrain LUNA-RODRIGUEZ was arrested in the Central District of California on July 28, 2020, and has not yet made his appearance in this District.

LUNA-RODRIGUEZ was a courier for Alan GOMEZ-MARENTES.  On May 1, 2020, agents saw LUNA-RODRIGUEZ meeting with FUENTES; on June 5, 2020, LUNA-RODRIGUEZ was with MEDINA in Southern California as they waited to receive Alan GOMEZ-MARENTES' 70-pound shipment of methamphetamine; on June 21, 2020, LUNA-RODRIGUEZ traveled from Southern California to GOMEZ-MARENTES' apartment in Tukwila; on June 30, 2020, LUNA-RODRIGUEZ again traveled from Southern California to Tukwila (after which GOMEZ-MARENTES told ESPINOZA he had a "shitload of tequila" (methamphetamine); and on July 12, 2020, LUNA-RODRIGUEZ again traveled from Southern California to Tukwila (bringing, according to intercepted communications, 12 kilograms of methamphetamine).

United States' Omnibus Memorandum in Support of Detention – 19
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

16.   **Luis CASTILLO-BARRAGAN**.

Luis CASTILLO-BARRAGAN has a detention hearing scheduled at 9:00 a.m. on Wednesday, August 5, 2020.

CASTILLO-BARRAGAN was a redistributor for the DTO; intercepted calls in May 2020 indicated that Alan and Ruth GOMEZ-MARENTES brought fentanyl-laced imitation oxycodone pills (which they referred to as "seeds") to Washington, and both Ruth GOMEZ-MARENTES and Luis CASTILLO-BARRAGAN distributed them.  For example, on May 13, 2020, agents intercepted a conversation between Alan and Ruth in which Alan told Ruth to have CASTILLO-BARRAGAN take a bag of 1,000 pills to "Eliseo," and charge $6.50 per pill.  Alan then told Ruth he would give her the 50-cent profit per pill.  Following two overdose deaths in mid-June 2020, agents intercepted communications between Alan and Ruth GOMEZ-MARENTES, and between Ruth and CASTILLO-BARRAGAN, in which the three discussed whether Alan GOMEZ-MARENTES' pills were responsible for the overdoses.

In CASTILLO-BARRAGAN's bedroom, agents found four Social Security cards, all with CASTILLO-BARRAGAN's name but each bearing a different Social Security number.  In CASTILLO-BARRAGAN's van, agents found approximately one ounce of methamphetamine.

Luis CASTILLO-BARRAGAN is a citizen of Mexico who has been previously deported (on or about January 1, 2009) from the United States.

17.   **Julian PINEDA CASILLAS**.

Julian PINEDA CASILLAS is at large.

United States' Omnibus Memorandum in Support of Detention – 20
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1      **18.    Blanca MEDINA**.

2      Blanca MEDINA has a detention hearing scheduled for 10:30 a.m. on Monday,

3  August 3, 2020.

4      MEDINA, Alan GOMEZ-MARENTES' girlfriend, helped him take money into

5  Mexico to pay for a replacement shipment of methamphetamine after the 70-pound

6  seizure on June 5, 2020, discussed above.

7      On June 6, 2020, agents listened as Alan GOMEZ-MARENTES told MEDINA

8  "to go to Tijuana to take … I am going to buy ten liters of tequila [10 pounds of

9  methamphetamine] … to see if they get inside [the United States] on Monday … they

10  will sell them to me at $720 per liter."  In a second phone call, MEDINA agreed to go to

11  Tijuana in Alan GOMEZ-MARENTES' Mercedes, so long as she was only taking money

12  into Mexico.  Agents searched CBP records and saw that GOMEZ-MARENTES'

13  Mercedes crossed into Mexico from the San Ysidro, California, Port of Entry at 7:08pm

14  and returned to the United States at San Ysidro at 11:53pm.  Cameras at the border

15  captured MEDINA as the driver of the vehicle as it left the United States.  She was

16  accompanied by two minors.

17      During the takedown on July 28, 2020, agents arrested MEDINA and her

18  boyfriend, Alan GOMEZ-MARENTES, at the Emerald Queen Casino.  During the search

19  of a Tukwila apartment she and GOMEZ-MARENTES shared, agents found a suitcase

20  under the bed containing approximately seven pounds of methamphetamine and nearly

21  four pounds of heroin.  Agents also found bulk currency (the amount has yet to be

22  determined) in a dresser drawer and in a safe.  A search of MEDINA's residence in

23  California resulted in the seizure of bulk currency (the amount has yet to be determined,

24  but appears to be in excess of $100,000).

25      MEDINA is a United States citizen.  In 2003, she was arrested for possession of

26  marijuana for sale in California.  The disposition of that arrest is unknown.

27

28

United States' Omnibus Memorandum in Support of Detention – 21
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1      **19.     Ruth Melisa GOMEZ-MARENTES**.

2          Ruth GOMEZ-MARENTES has a detention hearing scheduled at 1:30 p.m. on

3  Friday, July 31, 2020.

4          Agents intercepted Ruth GOMEZ-MARENTES' phones over multiple 30-day

5  periods, and from those interceptions (as well as those obtained over her brother, Alan

6  GOMEZ-MARENTES' phones), know that Ruth GOMEZ-MARENTES transported

7  methamphetamine (concealed inside candles) from California to Washington for her

8  brother, Alan GOMEZ-MARENTES.  In one conversation, Ruth told Alan that their

9  mother had asked why Ruth was bringing candles to Alan from California; Ruth then

10  said, "I never told her they were drugs."

11          Ruth GOMEZ-MARENTES also facilitated her brother's drug trafficking by

12  assisting him with logistics and in handling DTO finances, by managing funds available

13  for Alan's use on his bank card, buying plane tickets for Alan and his associates, sending

14  Uber vehicles to DTO members at Alan's request, and laundering cash drug proceeds.

15          Ruth GOMEZ-MARENTES also appears to have been involved in debt collection.

16  On October 25, 2019, Ruth GOMEZ-MARENTES told Alan GOMEZ-MARENTES that

17  an "old man" did not want to pay for "work" (drugs).  Ruth said, "Let's go to the address

18  to look for them if he does not pay."  Additionally, in March 2020, Ruth GOMEZ-

19  MARENTES and Alan GOMEZ-MARENTES discussed a dispute between Alan and

20  "Matthew," as described above.  Ruth GOMEZ-MARENTES then told her mother about

21  Alan GOMEZ-MARENTES' plan to beat up "Matthew."

22          Ruth GOMEZ-MARENTES is a citizen of Mexico.  She has no known criminal

23  history.

24                          **Defendant Arrested on Probable Cause**

25          Adrian SIMS was a DTO redistributor, found in possession of approximately ¼

26  pound of methamphetamine, 150 suspected fentanyl-laced imitation oxycodone pills, and

27  an extended firearm magazine on July 28, 2020.  A subsequent search of one of SIMS'

28  identified storage units yielded two rifles, one of which has been confirmed stolen.

United States' Omnibus Memorandum in Support of Detention – 22
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Prior to that, agents had intercepted calls on June 10, 2020, between SIMS and Alan GOMEZ-MARENTES related to SIMS' drug debt to a different DTO (which GOMEZ-MARENTES was apparently going to assume), and also observed a suspected delivery of methamphetamine from GOMEZ-MARENTES to SIMS (via Efrain LUNA-RODRIGUEZ) on July 14, 2020.

Adrian SIMS is a United States citizen. His criminal history includes multiple felonies, including a second degree assault conviction from 2003, a second degree unlawful firearm possession conviction from 2017, and convictions for violating a no-contact/protection/restraining order in 2018. The two no-contact order convictions resulted in a 15-month sentence. He has an active DOC warrant, and has previously failed to appear in other courts (including a failure to report to serve a one-day sentence).

## VI.    CONCLUSION

For the reasons set forth above, the government respectfully submits that these defendants are unable to overcome the presumption against detention that applies to this matter, and should therefore be held at the FDC pending trial.

Dated this 29th day of July, 2020.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

*/s/ Marci L. Ellsworth*
AMY JAQUETTE
MARCI L. ELLSWORTH
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, WA  98101
Phone: 206-553-7970
E-mail:  amy.jaquette@usdoj.gov
              marci.ellsworth@usdoj.gov

United States' Omnibus Memorandum in Support of Detention – 23
*United States v. GOMEZ-MARENTES, et al.* (CR20-092JCC)
*United States v. SIMS* (MJ20-470BAT)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800